UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RAY PINEDA,

        Plaintiff,

  vs.

NDOC, *et al.*,

        Defendants.

3:06-cv-00424-LRH-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

July 17, 2009

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court are plaintiff's motion for summary judgment (#73) and defendants' motion for summary judgment (#75). Defendants opposed plaintiff's motion (#80) and plaintiff replied (#88). Plaintiff opposed defendants' motion (#s 89 & 91) and defendants replied (#94).[1] The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for summary judgment (#75) be granted and plaintiff's motion for summary judgment (#73) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Ray Pineda ("plaintiff"), acting *in pro se*, is currently a prisoner at Ely State

---

[1] Plaintiff also filed a motion to strike and obtain documentation (#90). Defendants opposed (#93) and plaintiff replied (#95). Plaintiff asks the court to strike portions of a deposition submitted as exhibit B to defendants' motion for summary judgment (#75), because defendants submitted only specific sections of the deposition and did not disclose that plaintiff had objected to a line of questioning, and because the issue is "highly controversial" (#90, p. 2-3). Plaintiff also requests that the court order "the Attorney General to hand over all documents that the Attorney General's Office obtained from plaintiff's counsel." *Id*. p. 3. Defendants contend that the motion to strike is without merit because they are entitled to include portions of sworn deposition testimony that support their position (#93, p. 1-2). The court agrees. Plaintiff has presented no valid reason to strike deposition testimony that was given under oath. Therefore, plaintiff's motion to strike (#90) is **DENIED**. Further, as defendants do not object, defendants shall provide copies of the files received from John Calvert to plaintiff at the conclusion of this matter.

1  Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#22).
2  Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, alleging that prison
3  officials violated his First, Sixth, and Fourteenth Amendment rights to access to the courts, to
4  access to his attorney, and to due process, while he was housed as a pre-trial detainee at ESP and
5  at Nevada State Prison ("NSP"). *Id*. Plaintiff names as defendants James Baca, NSP Associate
6  Warden; Debra Cutshaw, caseworker at NSP; Bill Donat, NSP Warden; E.K. McDaniel, ESP
7  Warden; and Cristina Tripp, caseworker at ESP. *Id*. Plaintiff alleges three causes of action, as
8  follows:

9      Count I - Violation of First Amendment Right to Access to the Courts: Plaintiff alleges
10 that although he had a hearing related to his criminal case scheduled for February 9, 2006 at the
11 Washoe County Court, NDOC officials transferred him from NSP to ESP on December 12, 2005,
12 in an effort to interfere with his access to the court (#22, p. 4). Plaintiff states that because of this
13 transfer, he was unable to file motions or discuss "certain important" issues with his attorneys.
14 *Id*. Plaintiff claims that defendants failed to make necessary arrangements to insure that he attend
15 scheduled hearings on February 9 and February 21, 2006. He lost his remanded criminal case
16 because he was unable to file additional claims and motions at these hearings. *Id*.

17     Count II - Violation of Sixth Amendment right to defense counsel: Plaintiff claims that
18 defendants conspired to move him to ESP to interfere with his ability to contact his attorneys. *Id*.
19 p. 10. His transfer to ESP "placed an unjustifiable burden on the opportunity to consult with [his
20 attorneys]," which violated his Sixth Amendment rights. *Id*.

21     Count III - Violation of Fourteenth Amendment right to due process: Plaintiff alleges that
22 defendants prevented him from posting bail after his bail was reduced on November 3, 2005. *Id*.
23 p. 13. Plaintiff states that caseworker Grafton helped him contact his family regarding bail, and
24 that his family intended to post bail in December 2005. *Id*. However, defendants transferred
25 plaintiff to ESP on December 12, 2005, and "prevented [his] ability to set bond." Plaintiff claims
26 that because of difficulties caused by his transfer to ESP, he was unable to post bond. *Id*. Further,
27 defendants Tripp and McDaniel's failure to transfer plaintiff back to NSP before his hearings
28 violated his due process rights. *Id*.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A.  Discussion

#### 1.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for

3

discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### B. Analysis

#### 1. Count I - Access to the Courts

Plaintiff alleges that defendants impeded his access to the court because they failed to transport him to the Washoe County Court for two pretrial hearings on February 9, 2006 and February 21, 2006. Because plaintiff was not present for these hearings, he was unable to present multiple "motions," which subsequently caused him to lose his re-trial. Defendants raise numerous arguments against liability, as follows: 1) plaintiff was transferred to ESP based on his incarceration history; 2) plaintiff was represented at by counsel at both hearings he missed, and it was counsel's responsibility to present defendants with an order for plaintiff's transfer to court; 3) the February 9th hearing that plaintiff did not attend was held again on February 22, 2006, when plaintiff was present; 4) plaintiff informed the court that he was prepared to commence his re-trial on February 27, 2006; 5) and based on tort principles, defendants are not liable because there is no liability for a continued hearing, and because plaintiff's counsel's actions caused him to miss the two pre-trial hearing;  therefore, they are an intervening superseding cause of any damages plaintiff suffered. The court addresses each argument in turn.

##### a) Plaintiff's transfer to ESP

Plaintiff alleges that defendants transferred him from NSP to ESP in order to prevent him from accessing the court and his attorneys (#22, p. 7). Defendants contend that plaintiff was transferred to ESP because he committed two assaults on other inmates, and that his transfer was completely unrelated to his prospective trial date (#75, p. 20). Defendants' intent was based on security concerns rather than because of plaintiff's approaching trial and court appearances, as demonstrated by the fact that plaintiff was originally scheduled for trial on three prior occasions, all of which were continued based on plaintiff's requests, when he was still housed at NSP. *Id*.

Plaintiff includes almost no discussion to address defendants' argument that he was

4

1  transferred for disciplinary reasons, and not in an attempt to deprive him of his right to access the
2  court. However, plaintiff states numerous times that his transfer to ESP did prevent him from
3  communicating with his attorneys (*see* #73, p. 10, #88, p. 14). These arguments are discussed in
4  section II.B.2 *infra*.

5  In his November 20, 2008 deposition, plaintiff stated that he was told he was transferred
6  to ESP because he was a "closed-custody inmate," and that he "was being transferred for
7  disciplinary reasons," because he had been found guilty of committing two assaults on inmates
8  at NSP (#75, ex. B, p. 16). Plaintiff has presented no evidence to suggest that defendants
9  transferred him to ESP because they intended to prevent him from attending court hearings.
10 Rather, all evidence before the court demonstrates that plaintiff was transferred after he was
11 afforded due process hearings and he was found guilty of the charged offenses.

          **b)**      **February 9th and February 21st hearings and Orders to Produce**

14 Plaintiff claims that defendants violated his First Amendment right to access to the courts
15 because he was not transported to the Washoe County Court for hearings that occurred on
16 February 9, 2006 and February 21, 2006 (#23, p. 9). Defendants contend that it was plaintiff's
17 counsel's, and not NDOC's, responsibility to insure that the proper documentation was submitted
18 in order to transfer plaintiff to the Washoe County Court on the dates of his hearings (#75, p. 21).
19 Specifically, defendants never received a certified copy of a court order requiring plaintiff to be
20 present in court on February 9, 2006 or February 21, 2006, as necessitated by Administrative
21 Regulation ("AR") 540.01, II, 7 (ii) and (iii). *Id*. p. 15, #77, ex. K (submitted *in camera*).
22 Plaintiff's attorneys never made any attempt to contact NDOC officials to confirm that plaintiff
23 would be present for either hearing (#80, p. 17). Therefore, plaintiff's attorneys' actions are an
24 intervening superseding cause of any damage plaintiff suffered by being absent from these
25 hearings. (#75, p. 28). Further, the February 9, 2006 hearing was continued until February 22,
26 2006, at which time plaintiff was present. *Id*. p. 22. Therefore, plaintiff suffered no damages as
27 a result of his absence. *Id*.
28 Plaintiff contends that he was transported to court on prior occasions based upon the

5

1  blanket Order to Produce, and that a more specific, certified order to produce was not necessary
2  for the previous court appearances (#89, p. 6, 8). Therefore, defendants are wrongly trying to shift
3  the blame to plaintiff's attorneys. *Id*. Further, defendants had notice of his February 9, 2006
4  scheduled hearing because the hearing date was noted in plaintiff's "Case Note Printout Report."
5  *Id*. p. 9-10, #88, p. 13. Plaintiff asserts that because he was absent from the February 9, 2006
6  hearing he never received notice of the February 21, 2006 hearing. Therefore, he was unaware
7  that his attorneys failed to file certain motions. *Id*. p. 17-18. Plaintiff states that his attorneys led
8  him to believe that they filed motions he requested at the February 21, 2006 hearing, and that
9  plaintiff had no way of knowing this was false because he was not present at that hearing. *Id*. p.
10 18. Plaintiff's absence from these two hearings caused "fabricated evidence" to be used against
11 him at his criminal trial on February 27, 2006. *Id*. p. 21.

12  Plaintiff was convicted of second degree murder on July 28, 2000 (#75, p. 11). The
13 Nevada Supreme Court reversed plaintiff's conviction on May 4, 2004, and granted plaintiff a re-
14 trial. *Id*. #89, p. 9. Plaintiff requested and was granted three continuances for trial dates in 2005.
15 *Id*. Plaintiff's new trial was held *de novo* beginning on February 27, 2006 in Department 3,
16 Second Judicial District, Washoe County, State of Nevada before Judge Jerome M. Polaha, Case
17 No. CR 00-0210. Plaintiff was represented by counsel, John Calvert and Jenny Hubach, and he
18 was present for all phases of his re-trial, and was found guilty by jury (#75, p. 11). Following
19 plaintiff's conviction in 2000, he was placed in the custody of NDOC and housed at NSP.

20  After the Nevada Supreme Court overturned plaintiff's conviction, the Nevada District
21 Court executed a blanket "Order to Produce" plaintiff for hearings related to court proceedings
22 (#75, p. 11 & ex. E[2]). On December 13, 2005, plaintiff was transferred from NSP to ESP due to
23 disciplinary concerns. The 2004 Order to Produce was updated with the February 27, 2006 trial
24 date, and faxed to ESP on February 8, 2006 (#80-5, ex. 10). It appears that there had been some
25 confusion about when plaintiff needed to be present in court. On February 8, 2006, Adam Endel

---

27  [2]The Order to Produce Prisoner specifically ordered the Warden of NSP to produce plaintiff
28 "from time to time thereafter at such times and places as may be ordered and directed by the court
for such proceedings as thereafter may be necessary and proper in the premises" (#75, ex. E).

1  sent an email to Patti Stroccio from NDOC Central Transport, which asked whether she knew if
2  plaintiff had any scheduled court appearances (#75, ex. L). She replied that "No orders [had]
3  come in for [plaintiff]." However, she recalled hearing that plaintiff had a hearing scheduled, but
4  that "nothing [had] come in yet." *Id*. Patti Stroccio then sent a follow-up email to ESP staff,
5  which read: "Contacted Bonnie at the DA's office... Yes...they did want Mr. Pineda for
6  tomorrow... did not get notified... they will get new date for the motion... but... the trial is 02-27-
7  06. The DA's office would like Mr. Pineda on tomorrow's bus (02-09-06). ... I faxed the original
8  "Order to Produce" which came out in 2004... we seem to have problems with these as the DA's
9  office can use the Original Order from the first to the end of the Case" (#80-5, ex. 12). Plaintiff
10 was transferred back to NSP on February 9, 2006 (#75, p. 12-13).
11     The District Court held a pre-trial hearing on February 9, 2006 before Judge Polaha (#75,
12 p. 9). Plaintiff was not present for this hearing. However, his attorneys were present. *Id*. After the
13 hearing on February 9, 2006, Judge Polaha executed an "Order for Inmate Return to Washoe
14 County Detention Center" (#80-5, ex. 16). Plaintiff's attorneys filed this Order with the Clerk of
15 Court on February 14, 2006 (#75, p. 9). A certified copy of this Order was executed on February
16 22, 2006. *Id*., ex. 17. The pre-trial motions hearing was continued on February 21, 2006. (#80-5,
17 ex. 21, #91, ex. L). Plaintiff was again not present for this hearing. Plaintiff's counsel stated that
18 he did not know where plaintiff was, but that plaintiff had not been transported to the Washoe
19 County Jail (#91, ex. L). Further, plaintiff's counsel requested that the hearing be continued
20 because it was "too important a hearing for [plaintiff] to miss." *Id*. The court agreed that the
21 hearing should be continued; Judge Polaha noted that he was "not suggesting that we [have the
22 hearing] without [plaintiff]." *Id*. However, Judge Polaha decided that it was not necessary to have
23 plaintiff present in order to grant pre-trial motions filed by the District Attorney the previous
24 October "because there was no opposition for them." *Id*. A hearing was set for the following
25 morning, February 22, 2006, at 8:30 AM. *Id*. The Deputy District Attorney advised the court that
26 he would inform the prison of the hearing. *Id*. However, it is unclear whether plaintiff was present

7

at the 8:30 AM hearing.[3] Plaintiff's counsel again met with Judge Polaha, in chambers, at 1:45 PM on February 22, 2006. Plaintiff's counsel stated that plaintiff had been transported to the Washoe County Jail and that all of his legal files were to be transported that day (#91, ex. M). Plaintiff's counsel also noted that plaintiff was upset about the missed hearings, but that plaintiff blamed the situation on his attorneys "for not coming out to see him in Ely, for not being able to get him on bail, for being just taken out and brought here today" (#75, p. 23, ex. G).

A hearing on the motion to qualify plaintiff's expert witness was held on February 24, 2006 (#75, ex. C). Both plaintiff and his counsel were present. *Id*. Plaintiff's counsel discussed with the court the possibility of continuing plaintiff's re-trial. Plaintiff's counsel represented to the court that he was prepared to proceed with trial on Monday, February 27, 2006. *Id*. Further, plaintiff was also prepared for trial. Plaintiff's attorney, Mr. Calvert stated: "He feels comfortable because he knows what kind of stuff he has got. And he knows what he talked about. And he knows where the focus of our case is, from not only his standpoint but mine. I think we are definitely on the same page on that." *Id*. Ms. Hubach also stated that plaintiff advised her that "he is comfortable starting on Monday." *Id*. To insure that plaintiff would be able to prepare after the jail turned the lights off, the court ordered that plaintiff be provided a reading light. *Id*. Additionally, plaintiff's counsel stated that he would go to the jail to work with plaintiff over the weekend to continue trial preparation. *Id*. However, it appears that plaintiff's counsel only visited plaintiff on February 23rd and 24th, and not over the weekend immediately preceding trial (#75, ex. T). During the February 24, 2006 hearing, the court granted plaintiff's motion to allow his expert to testify, and the expert did testify at plaintiff's trial (#75, p. 10).

Plaintiff's main concern appears to be that he was unable to submit "motions" to the court due to his absence at the February 9th and 21st hearings. Plaintiff claims that his attorneys lied to

---

[3] In the statement of facts, defendants state that, during the February 22, 2006 hearing, plaintiff's counsel represented that plaintiff was still at ESP (#75, p. 10). However, in the argument section of their motion, defendants claim that defendant was present for the February 22, 2006 hearing. *Id*. p. 22. Additionally, in the Report of Investigation of Pre-trial events in State v. Pineda (#46), defendants state that the "'Transcript of Proceedings' for the District Court on February 22, 2006 indicate that Pineda was present for the 'Motion to Confirm Trial Date' held at 8:30 a.m" (#46, p. 7). Neither party attached a transcript of this hearing.

1  him when they advised him that they had filed such motions. The purpose of the motions was to
2  prevent "fabricated evidence" from being presented during plaintiff's trial (#88, p. 7). Plaintiff
3  states that "due to the NDOC's interference" he could not have known the motions were not filed
4  and he "did not have a reason to believe that <u>his</u> own counsel would lie to him." Therefore,
5  plaintiff "believed he was ready to proceed with trial." *Id*. p. 6. Plaintiff contends that had he been
6  present at the February 21, 2006 hearing, he would have known that the motions were not filed,
7  and "would have known to immediatley (sic): <u>Not to proceed, voice objection, or fire his attornies</u>
8  (sic), and do what was necessary to have presented his motions, wich (sic) "<u>fabricated evidence</u>."
9  *Id*. p. 7 (underline in original).

10  Nev. Rev. Stat. § 178.388 requires a criminal defendant to be "present at the arraignment,
11  at every stage of trial, including the impaneling of the jury and the return of the verdict, and at the
12  imposition of sentence." Plaintiff has not directed the court to any law that suggests that plaintiff
13  has a due process right to be present for all pre-trial hearing, even those hearing that are continued
14  and re-held in plaintiff's presence, when he is represented by counsel. Plaintiff has also presented
15  no law that suggests that defendants are required to transport plaintiff to court in the absence of
16  a court order, as required by AR 540.01, II, 7 (ii) and (iii), or in the absence of any contact from
17  plaintiff's attorneys or the Deputy District Attorney.

18  It appears that defendants did not receive a certified copy of the order to produce plaintiff
19  for any hearings until February 22, 2006 (#75, p. 4). It is unclear if and when plaintiff's attorneys
20  contacted NSP officials. However, the court need not determine when defendants had unofficial
21  notice of plaintiff's February 9th and February 21st hearings, or what notice was necessary before
22  defendants were required to transport plaintiff to the Washoe County Courthouse, because
23  plaintiff has failed to demonstrate that defendants' actions were proximate causes of any harm
24  plaintiff may have suffered. Given plaintiff's absence, the court continued hearings for the motion
25  to confirm his trial date and the motion to certify his expert witness, and held these hearings again
26  on February 22, 2006 and February 24, 2006, at which time plaintiff was present. At this hearing,
27  plaintiff had the opportunity to discuss any motions he wanted to file with the court. Plaintiff has
28  presented no evidence that defendants or anyone else prevented him from raising objections to

1  the prosecution's motions or from submitting motions to the court. Further, plaintiff specifically
2  stated that he was prepared to proceed with trial on February 27, 2006.

3  Plaintiff's absence from the February 9th and 21st hearings did not prevent plaintiff's
4  attorneys from filing plaintiff's requested motions, and it did not cause them to mislead plaintiff
5  into believing that such motions were filed. Plaintiff and his attorneys had over two years to
6  prepare for his criminal re-trial. Any failure to file specific motions was the choice of plaintiff's
7  attorneys. Further, plaintiff's expert witness testified at trial. Plaintiff's trial was *de novo*, and
8  defendants are not responsible for any strategic decisions plaintiff's counsel made before or
9  during trial. To the extent that plaintiff wishes to raise allegations of ineffective assistance of
10 counsel, he must do so by petitioning for a writ of habeas corpus (see *Heck v. Humphrey*
11 discussion below). Plaintiff has failed to present evidence that defendants interfered with his right
12 to access to the courts. Therefore, defendants' motion for summary judgment (#75) is granted and
13 plaintiff's motion for summary judgment (#73) is denied as to count I.

14     **c)**    ***Heck v. Humphrey***

15 Although not raised by defendants, the court also finds that plaintiff's claims are barred
16 by *Heck v. Humphrey*, 512 U.S. 477 (1994). In order to recover damages for allegedly
17 unconstitutional conviction or imprisonment, or for other harm caused by actions whose
18 unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that
19 the conviction or sentence has been reversed on direct appeal, expunged by executive order,
20 declared invalid by a state tribunal authorized to make such determination, or called into question
21 by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages
22 bearing that relationship to a conviction or sentence that has not been so invalidated is not
23 cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district
24 court must consider whether a judgment in favor of the plaintiff would necessarily imply the
25 invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the
26 plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id*. at 486-
27 87.

28 The theory behind plaintiff's complaint is that because defendants transferred him to ESP

1  and did not transport him to the Washoe County Courthouse for hearings on February 9, 2006 and
2  February 21, 2006, plaintiff was unable to present motions to the court. Specifically, plaintiff
3  states that because he did not make these motions, defendants were able to present "fabricated
4  evidence" to the jury. Had plaintiff been able to present such motions, his retrial would not have
5  ended in a conviction. Plaintiff also appears to claim that had he been able to post bail, he would
6  have been present at two February hearings and therefore, would have presented his motions to
7  the court, which would have caused the jury to consider different evidence and not find plaintiff
8  guilty of second degree murder. If the court were to find that plaintiff was denied access to the
9  court or his attorneys before his trial, such a finding would necessarily imply the invalidity of
10 plaintiff's conviction. This would essentially be a determination that plaintiff did not receive a
11 fair trial because false evidence related to plaintiff's crime was wrongly presented to the jury.
12 Therefore, plaintiff must bring these claims as a petition for a writ of habeas corpus and
13 demonstrate that his conviction has been invalidated before he can be awarded damages under
14 section 1983.

### 2.    Count II - Access to Attorneys

16      Plaintiff alleges that, by transferring him to ESP, defendants interfered with his ability to
17 contact his attorneys, which violated his Sixth Amendment rights (#22). Defendants argue that
18 they did not prevent plaintiff from accessing his attorneys (#75, p. 28). Plaintiff understood that
19 it was his attorneys' choice to not visit him at ESP, and plaintiff has presented no evidence that
20 NDOC officials prevented plaintiff's attorneys from calling or writing plaintiff at ESP. *Id*.
21 Further, plaintiff was at NSP after February 9, 2006; therefore, any distance argument that
22 plaintiff asserts is not valid after this time. *Id*.

23      Plaintiff contends that defendants have admitted that his transfer to ESP denied him
24 contact with his attorneys (#89, p. 24). Specifically, plaintiff asserts that defendants statement
25 "Pineda was never denied contact with his attorneys notwithstanding his transfer to Ely" is a
26 concession that plaintiff was denied access to his attorneys. *Id*., quoting #75, p. 7. Plaintiff states
27 that his transfer to ESP prevented him from "freely communicating" with his attorneys, which
28 hindered his ability to secure a witness for his trial. *Id*. p. 27.

11

1        Defendants maintain that "nothing prevented letters, telephone calls and personal visits
2   by Pineda's attorneys to meet with Pineda and discuss the case at any time during the pre-trial and
3   trial phases of the case. There are no records indicating Pineda's attorneys ever attempted a single
4   call or visit with Pineda at Ely" (#94, p. 6). Further, based on the attorneys' statements to the
5   court on February 9th and February 21st, it appears that they did not know plaintiff was transferred
6   back to NSP on February 9th, and there is no evidence they ever attempted to locate him after the
7   February 9, 2006 hearing. *Id.*, p. 7. Additionally, plaintiff's re-trial was originally scheduled for
8   July 1, 2004; NDOC is not responsible for the fact that plaintiff and his attorneys failed to discuss
9   plaintiff's trial in the two and one-half years before plaintiff was transferred to ESP. *Id*. Rather,
10  plaintiff's attorneys are solely responsible for any lack of pre-trial contact (#80, p. 19).

11       The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall
12  enjoy the right... to take the Assistance of Counsel for his defense." U.S. Const. amend. VI.
13  "[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense,
14  whether classified as petty, misdemeanor or felony, unless he was represented by counsel at his
15  trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). Further, "the right to counsel is the right
16  to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).
17  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so
18  undermined the proper functioning of the adversarial process that the trial cannot be relied on as
19  having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

20       There is no evidence that defendants prevented plaintiff from accessing his attorneys.
21  Plaintiff was housed at NSP from the time his conviction was overturned on May 4, 2004 until
22  December 12, 2005, when he was transferred to ESP. Plaintiff remained at ESP until February
23  9, 2006, when he was transferred back to NSP. Plaintiff presents no evidence that his attorneys
24  were prevented from communicating with him during this two-month period. Although ESP is
25  some distance from NSP and plaintiff's attorneys' places of business, nothing prevented his
26  counsel from making the trip to ESP to discuss plaintiff's case with him. Further, there is no
27  evidence that plaintiff and his attorneys could not correspond by telephone or letter. Plaintiff
28  states that his counsel were in court and unavailable from "8 am to ? whatever time," and that

1   ESP does not allow inmates to use the telephone until 7:00 AM; therefore, plaintiff was unable
2   to contact his attorneys by phone (#88, p. 15). It is unbelievable that plaintiff's counsel would be
3   completely unavailable all of the time. Even if his attorneys were conducting trials during the time
4   plaintiff was housed at ESP, there were also presumably times before or after trial, or during a
5   court recess, that plaintiff could have spoken with them. Additionally, defendants have no control
6   over his attorneys' schedules and plaintiff has presented no evidence to suggest defendants did
7   anything to prevent counsel from calling plaintiff, or that plaintiff's counsel even attempted to
8   call him at ESP. Finally, defendants placed no burdens on plaintiff's ability to correspond with
9   his attorneys through written communication. The evidence demonstrates that plaintiff sent
10  numerous letters to his attorneys, and that they failed to open at least two of these letters. NDOC
11  officials did not prevent plaintiff from sending or his attorneys from receiving these letters.
12  Defendants could not control what plaintiff's counsel did with plaintiff's letters after receipt.

13         Plaintiff also claims that defendants' statement "Pineda was never denied contact with his
14  attorneys notwithstanding his transfer to Ely" is an admission that defendants prevented counsel
15  from contacting plaintiff. This statement is not an admission; rather, it is a denial of any liability.
16  Defendants are denying they interfered with plaintiff's ability to contact his attorneys despite the
17  fact that plaintiff was housed at ESP in eastern Nevada. Based upon their statements at plaintiff's
18  February 21, 2006 hearing, plaintiff's counsel were unaware that plaintiff had been transferred
19  to NSP on February 9, 2006. Plaintiff's counsel could have determined where plaintiff was
20  housed through a phone call, and there is no evidence they were prevented from contacting him
21  at either ESP or NSP.

22         Much of plaintiff's complaint asserts that his attorneys did not present motions he
23  requested to the trial court. To the extent the plaintiff wishes to bring a claim for ineffective
24  assistance of counsel, section 1983 is not the proper vehicle with which to do so. Rather, as
25  previously discussed, plaintiff must bring such a claim through a petition for writ of habeas
26  corpus. *See Heck v. Humphrey*, 512 U.S. at 486-87. Therefore, defendants' motion for summary
27  judgment (#75) is granted, and plaintiff's motion for summary judgment (#73) is denied as to
28  count II.

### 3. Count III - Ability to Post Bail

Plaintiff alleges that defendants interfered with his ability to post bail because they transferred him to ESP (#22, p. 13). Defendants argue that bail was plaintiff's responsibility and that they had no involvement with plaintiff's bail (#75, p. 28). Nevada law requires bail to be posted with the Clerk of Court with jurisdiction; therefore, "[n]othing NDOC is alleged to have done interfered in even the slightest of ways with this fundamental step in gaining a release on bail." *Id*. Defendants further argue that plaintiff has the burden of proving he posted or attempted to post bail with the Clerk, and that defendants interfered with this action, and that plaintiff has failed to meet this burden. *Id*. p. 29.

Plaintiff claims that defendants did involve themselves in his attempts to post bail because caseworker Ken Grafton helped plaintiff contact his family to make bail arrangements and added a note in the NDOC computer system that bail was granted (#88, p. 18, #89, p. 28, #91, ex. D). Plaintiff also contends that when a bail bondsman called NSP, NDOC employees responded "[t]here is no bail set. We are not releasing him." *Id*. p. 29, #73, p. 7-8, #91, ex. M, p. 6, l. 3-4 (transcript of February 22, 2006 In Chambers Conference, quoting Ms. Hubach). Further, plaintiff's transfer to ESP in December "caused a delay for the plaintiff to post his bail and in the month of February the plaintiff's wife suffered a heart attack, and due to the prison's interfearance (sic), this petitioner was denied his right to post bail." *Id*.

Defendants contend that Nev. Rev. Stat. § 169.245 requires bail be posted with the Clerk of Court, and plaintiff makes no claim that this was done (#80, p. 18). Plaintiff's attorneys had the opportunity to post bail in the appropriate location and argue for plaintiff's relief, and that they failed to do, which is not the fault of defendants. *Id*. Additionally, "even if the[y] acted erroneously regarding [plaintiff's] bail (which they did not), [plaintiff] offers no evidence that he or anyone could have posted bail for him in a sufficient amount to satisfy the bail order from the court;" therefore, plaintiff fails to establish proximate cause (#94, p. 7). Further, plaintiff does not explain how bail would have affected the jury's verdict. *Id*. p. 8.

Nev. Rev. Stat. § 169.245 sets the bail requirements for state pre-trial detainees in Nevada. It states: "In all criminal actions or proceedings where a bond or other undertaking is required by

14

1  the provisions of this title or by the Nevada Rules of Civil Procedures or the Nevada Rules of
2  Appellate Procedure, the bond or undertaking shall be presented to the clerk, of the court in which
3  the action or proceeding is pending, for his approval before being filed or deposited."

4  As previously discussed, between the time the Nevada Supreme Court overturned
5  plaintiff's conviction and plaintiff's retrial, he was held at NSP and ESP based on a "safekeep
6  status." Plaintiff requested that he remain in NDOC custody until his trial rather than be
7  transferred to the Washoe County Jail (#75, p. 13, ex. R, Transcript - Motion to Set
8  Trial/Continued, held on July 8, 2004, p. 6 (Judge Polaha: "You shouldn't be there [at NSP]. You
9  should be up here at the county jail." Plaintiff: "Can I ask, I do not know how to do that. I was
10 hoping I could stay in prison while my trial was going through. Is it possible?")). Judge Polaha
11 reduced plaintiff's bail to $25,000 on November 3, 2005, at the same hearing in which he set
12 plaintiff's final trial date of February 27, 2006 (#75, ex. D). After this hearing, on November 3,
13 2005, caseworker Grafton added an entry in plaintiff's "Case Note Printout Report," which states:
14 "Grafton - Went to Washoe District Ct. today. New trial granted with I.O. with $25,000 bail.
15 New... trial set for 2-06. Case CR00-0210" (#91, ex. D). Also on November 3, 2005, an NDOC
16 employee named Zappettini added a note in plaintiff's Case Note Printout Report, which states:
17 "Court disposition form forwarded to Patti at Central Trans. Disposition: [motion to] confirm
18 2/9/06 & trial set for 2/27/06...." *Id*.

19 Plaintiff claims that his family attempted to secure bail through a bail bondsman, but that
20 officials at NDOC told the bail bondsman that no bail was set and that they were not releasing
21 him. Plaintiff's attorney, Ms. Hubach, relayed this information to Judge Polaha during an in-
22 chambers conference on February 22, 2006 (#75, ex. D, p. 6). Judge Polaha explained that
23 normally, the court would send plaintiff's bail documentation to the prison with plaintiff's other
24 paperwork if there is a reduction in the bail order. *Id*. During this conference, plaintiff's attorneys
25 do not state whether they personally contacted the clerk of court or NDOC officials directly,
26 rather than through a bail bondsman. Plaintiff does not allege that he or any member of his family
27 attempted to contact the clerk of court or NDOC. Further, plaintiff does not explain what role his
28 attorneys played in attempting to secure bail for plaintiff. It is the responsibility of plaintiff and

15

1   his attorneys to insure that all procedures related to bail are correctly handled. The only role
2   NDOC would have played is to release plaintiff once they received approval from the court
3   indicating that the clerk of court received sufficient bail. Plaintiff contends that NDOC officials
4   involved themselfs in plaintiff's bail issues because caseworker Grafton made an entry in
5   plaintiff's file noting that his bail was reduced to $25,000. However, Grafton's act of
6   summarizing what had occurred at plaintiff's November 3, 2005 hearing in no way creates
7   liability for NDOC. As in his previous counts, plaintiff appears to be asserting a claim for
8   ineffective assistance of counsel or malpractice against his attorneys. There is no evidence that
9   NDOC officials in any way attempted to prevent plaintiff or anyone else from posting bail with
10  the clerk of court. Therefore, defendants' motion for summary judgment (#75) is granted and
11  plaintiff's motion for summary judgment (#73) is denied as to count III.[4]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not presented evidence that defendants interfered with plaintiff's right to access to the courts, that defendants prevented plaintiff from contacting his attorneys, or that defendants prevented plaintiff from posting bail. Further, plaintiff's claims are based on *Heck v. Humphrey*.

As such, the court recommends that defendants' motion for summary judgment (#75) be **GRANTED**, plaintiff's motion for summary judgment (#73) be **DENIED**, and plaintiff's motion to strike (#90) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the

---

[4] Plaintiff also seeks damages for "loss of property due to move." However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if an meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Therefore, plaintiff must file a property claim form with the prison.

1  District Court.

2      2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#75) be **GRANTED**, plaintiff's motion for summary judgment (#73) be **DENIED**, and plaintiff's motion to strike (#90) be **DENIED**.

**DATED:** July 17, 2009

*Valerie P. Cooke*

_____
**UNITED STATES MAGISTRATE JUDGE**